UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 08-21808-CIV-JORDAN

PITNEY BOWES INC.,                                    )
                                                      )
          Plaintiffs                 )
                                                      )
vs.                                                   )
                                                      )
FRANCISO ACEVEDO,                                     )
                                                      )
          Defendants                 )
_____ )

### ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

Pitney Bowes filed this diversity action against Mr. Acevedo - its former sales executive and district sales manager - for breach of confidentiality, non-competition, and non-solicitation clauses in an employment agreement. Pitney Bowes also sued for misappropriation of trade secrets. I denied Pitney Bowes' motion for a temporary restraining order for lack of evidence that *ex parte* relief was necessary [DE. 6]. Subsequently, I held an evidentiary hearing on the motion for a preliminary injunction.

After reviewing the evidence presented at the hearing and the parties' legal arguments, I conclude that Pitney Bowes is entitled to injunctive relief against Mr. Acevedo only as to the non-competition and non-solicitation provisions of the employment agreement. Accordingly, the motion for a preliminary injunction [D. E. 4] is GRANTED IN PART.

### I. BACKGROUND FACTS

Pitney Bowes leases and sells postal technology products and services, including machinery and software. *See* Hr'g Tr. (Ms. Rubi's test.) *See also* Rubi Decl. at ¶ 5-11. Mr. Acevedo, a salesman by profession since 1985, began his employment with Pitney Bowes' Miami district office on August 15, 2001 as a sales executive. *See* Hr'g Tr. (Mr. Acevedo's test.) *See also* Acevedo Aff. at ¶ 2. As a condition of employment, Pitney Bowes required Mr. Acevedo to sign a confidentiality, non-competition/non-solicitation and non-raid agreement. *See* Hr'g Tr. (Ms. Rubi's test.); Rubi Decl. at ¶ 39. *See also* Mot. for Inj., Ex. 1(a) (agreement).

The agreement provides, in part, that for a period one year after his termination of employment, Mr. Acevedo

(1) shall not, without written prior approval of the Company, directly or indirectly own, manage, operate, join, be employed by or participate in the ownership, management, operation, or control of, or be connected in any manner with any business of the type or character of the Company within a radius of fifty (50) miles of the territory in which employee was working at time of termination;

(2) shall not contact, directly, or indirectly, any prospective customer or current customer of the Company that Employee has had contact with during one year prior to the termination of this Agreement, nor will Employee contact any prospective customer that Employee learned of during his employment with the Company;

(3) will not solicit, entice, or encourage any employee of the Company or an independent contractor of the Company to terminate his or her relationship with the Company and Employee shall not approach any such employee or independent contractor for such purposes or authorize or knowingly approve the taking of such actions by any other person.

*See* Agreement at 1-2.

Along with this agreement, Mr. Acevedo signed an intellectual property, confidential information, and non-solicitation agreement prohibiting him from disclosing or using for himself any information of a confidential nature relating to the technical, commercial or any other affairs of Pitney Bowes.  *See* Mot. for Inj., Ex. 1(b) (agreement).

At Pitney Bowes, Mr. Acevedo held positions as sales executive, field sales manager, and area sales manager for the Miami district. *See*  Rubi Decl. at ¶ 33.  *See also* Hr'g Tr. (Ms. Rubi's test.) While in these positions Mr. Acevedo was entrusted with extensive proprietary information including customer contacts, pricing and lease term information.  *See* Hr'g Tr. (Ms. Rubi's test.) *See also* Rubi Decl. at ¶ 42.  He also had access to Pitney Bowes' customer database and information about clients' anticipated needs. *See id.*

Mr. Acevedo also received sales training locally and two to three times in Atlanta, Georgia. The sales training consisted of Pitney Bowes software which includes Pathfinder, OZ, and Lease Based Management ("LBM").  *See* also Hr'g Tr. (Ms. Rubi's test.)

On November 20, 2007, Mr. Acevedo resigned from Pitney Bowes and eventually went to

work for Postalogic, a competitor of Pitney Bowes based in Palm Beach County.  Mr. Acevedo told Pitney Bowes about his intentions to work for Postalogic, but Pitney Bowes did not object because Postalogic's offices were outside of the non-compete zone.  *See* Hr'g Tr. (Ms. Rubi's test.)

On May 23, 2008, Mr. Acevedo went to the Miami Springs office of Douglas Plumbing, Inc. -  Pitney Bowes' client - and dropped off a package with a proposed lease agreement and a business card.  He called a few days later to "follow up" on the business proposal.  *See* Hr'g Tr. (Mr. Acevedo's test.)  According to Mr. Acevedo, T.D. Sieber - the owner of Postalogic - asked him to take the package to Douglas Plumbing because the assigned sales representative was unavailable. *See id.*

Moreover, the visitors' log of  "Coverall", another Pitney Bowes' client, reflect that Mr. Acevedo visited its Boca Raton office (which is within the non-compete zone) on June 6, 2008.  This was approximately ten days after Pitney Bowes' counsel sent  a cease and desist letter to Mr. Acevedo based on the restrictive covenants.  *See* Hr'g Tr. (Ms. Rubi's test.)

After this lawsuit was filed, Mr. Acevedo was terminated by Postalogic because Postalogic could not afford to get dragged into a protected litigation battle.  *See* Hr'g Tr. (Mr. Sieber's test.) Mr. Acevedo is now looking for a job "wherever" he can find it.  *See* Hr'g Tr. (Mr. Acevedo's test.)

## II. ANALYSIS

A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the moving party clearly establishes four prerequisites: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that  if issued, the injunction would not be adverse to the public interest.  *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003); *Imaging Business Mach., LLC v. Bantec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006); *Zardui-Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir. 1985). After reviewing the evidence of record and the parties' arguments, I conclude that an injunction is appropriate to enjoin Mr. Acevedo from breaching the non-competition and non-solicitation provisions of his employment

agreement.[1]

### 1.  A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

To prevail on its claim for breach of contract, Pitney Bowes will have to prove that Mr. Acevedo breached a valid employment restrictive covenant.  I find that Pitney Bowes has shown a substantial likelihood of success on the merits.

### A.  THE EMPLOYMENT RESTRICTIONS ARE ENFORCEABLE

Pitney Bowes has sufficiently shown that the employment restrictions at issue are likely to be enforceable.

To enforce an employment restriction under Florida law, a party must establish a *prima facie* case that the restriction (1) "is reasonable in time, area, and line of business" and (2) "is reasonably necessary to protect the legitimate business interest or interests justifying the restriction."  *See* Fla. Stat. § 542.335(1)-(1)(b).  *See also Autonation, Inc. v. O'Brien, Jr.*, 347 F. Supp. 2d 1299, 1304 (S.D.Fla. 2004).  Once a *prima facie* case is established, the burden shifts to the party opposing the enforcement of the covenant to show that the restriction is overbroad, overlong, or otherwise not reasonably necessary to protect the asserted business interest.  *See id.*

Pitney Bowes has established a *prima facie* case that the restrictions are reasonable in time, area, and line of business.  Employment restrictions for less than six months are presumed to be reasonable.  *See* § 542.335(d)(1). On the other hand, restrictions of more than two years in duration are presumed to be unreasonable.  *See id.*  The restrictions against Mr. Acevedo are for one year and prohibit him from competing with Pitney Bowes within 50 miles of the geographic location where he worked and from soliciting any of the clients he serviced during the last year of his employment. These restrictions do not fit into any of the statutory presumptions.  But Florida courts have generally found similar restraints to be reasonable.  For example, in *Grant v. Robert Half In'l, Inc.*, 597 So.2d

---

[1]  Pitney Bowes is also suing for breach of a confidentiality agreement and misappropriation of trade secrets.  Although Mr. Acevedo is strongly encouraged not to violate the confidentiality agreement in question, at this stage of the proceedings I am reluctant to enter an injunction on these claims.  Pitney Bowes has not sufficiently established that Mr. Acevedo disclosed any confidential information to Postalogic, nor has it rebutted Mr. Acevedo's testimony that he accessed Pitney Bowes' computer files before he left for the benefit of Luis Sanchez - a Pitney Bowes executive. Notably, Pitney Bowes stated that it was likely going to call Mr. Sanchez as a witness to rebut Mr. Acevedo's testimony, but it did not do so.

801, 801 (Fla. 3d DCA 1992), the Third District affirmed an injunction enforcing a non-compete covenant preventing a former employee from competing with his former employer for twelve months after the termination of his employment within 50 miles of any office where he had worked.  The restrictions in *Grant* were very similar to the restrictions here.  As such, I easily find that the employment restrictions against Mr. Acevedo are reasonable.

The employment restrictions are also substantially likely to be found reasonably necessary to protect a legitimate business interest.  The term "legitimate interest" includes "trade secrets" or "valuable confidential business or professional information that otherwise does not qualify as trade secrets" and "substantial relationships with specific prospective or existing customers, patients, or clients"  *See* § 542.335(b)(2),(3).  Here, it is undisputed that Mr. Acevedo had a high position in Pitney Bowes' sales department; he was a sale director for a district comprising most of South Florida.  It is similarly undisputed that Mr. Acevedo had almost unfettered access to Pitney Bowes' database and specific client information such as customers' purchasing patterns and expected future needs. Irrespective of whether this type of information qualifies as a trade secret under Florida law, it is undoubtably "valuable confidential business information," and this information pertains to Pitney Bowes' substantial relationships with specific clients.  Mr. Acevedo's arguments to the contrary are simply belied by the evidence.

A one-year restriction preventing a former sales executive from competing with his former employer within fifty miles from where he worked and from soliciting clients he serviced (or oversaw) in his last year of employment is likely to be found reasonable to protect Pitney Bowes' "valuable confidential business information" and specific client relationships.  Indeed, this restriction does not prevent Mr. Acevedo from obtaining employment in his chosen profession as evidenced by the fact that he had a position with Postalogic - which he could have maintained if he had honored his agreement with Pitney Bowes.

### B. Mr. Acevedo's Breach

The evidence strongly suggests that Mr. Acevedo breached the non-competition/non-solicitation agreement with respect to at least two clients of Pitney Bowes.

Mr. Acevedo admits that on May 23, 2008, he visited the offices of Douglas Plumbing, Inc. in Miami Springs and left a filled-out "equipment lease agreement" for the client's signature together

5

with his business card.  He also admits that Douglas Plumbing was a client of Pitney Bowes', that the Miami Springs office was within the area where he had worked, and that he called Douglas Plumbing a few days later to "follow up."   On these facts, I find that Mr. Acevedo's business contacts with Douglas Plumbing concerning a lease with Postalogic are likely to be a breach of the employment restrictions.  Indeed, at the hearing, Mr. Acevedo's counsel admitted that "he may have gone too far" when he called Douglas Plumbing to "follow up."

I understand that Mr. Acevedo claims that he was contacting Douglas Plumbing on behalf of another representative.  I do not, however, find this testimony credible.  After all, Mr. Acevedo left the client his business card, not the card of the alleged account representative.  And Mr. Acevedo was unable to convincingly explain why Postalogic sent him to "cover" for the unavailable account representative instead of another sales representative.  Or why he had to make the follow up call after he dropped off the proposal.

In any event, even if I were to believe Mr. Acevedo's testimony, the agreement prohibits him from "directly or indirectly" competing with Pitney Bowes within the non-compete zone.  As such, the allegation that Mr. Acevedo contacted Douglas Plumbing on behalf of another representative is likely not to be a valid defense.[2]

Similarly, Pitney Bowes is likely to establish that Mr. Acevedo visited the Boca Raton offices of "Coverall," another Pitney Bowes' client, on June 6, 2008.  Indeed, Mr. Acevedo will be hard pressed to deny this fact  in light of the visitor's log showing his name on that date.

Mr. Acevedo argues that these customers solicited him and that as such he was allowed to contact them.  I disagree.  First, this case involves a non-competition agreement in addition to a non-solicitation agreement.  As such, this argument does not help Mr. Acevedo with respect to his breach of the non-competition agreement.  *See Coastal Loading, Inc. v. Tile Roof Loading, Inc.*, 908 So.2d 609, 612-13 (Fla. 2d DCA 2005) (analyzing non-competition and non-solicitation agreements separately).  Second, as Mr. Acevedo's counsel implicitly conceded at the hearing, Mr. Acevedo's

---

[2] I also understand that Douglas Plumbing did not sign the lease agreement proposed by Mr. Acevedo and that it stayed with Pitney Bowes.  Although this might be relevant to Pitney Bowes' claim for damages, it has little relevance in the analysis of Pitney Bowes' claim for injunctive relief.

follow up call to Douglas Plumbing is likely to be deemed a solicitation even under the strictest definition of the term.

### C. IRREPARABLE HARM

Under Florida law, "the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *See* § 542.335(j). As such, a party seeking an injunction to enforce a restrictive covenant does not need to prove that the defendant's specific activities will cause irreparable injury if not enjoined. Rather, once a violation is established, the burden is on the party opposing the injunction to rebut the presumption of irreparable harm. See *Autonation,*, 347 F. Supp. 2d at 1307. This is a very high burden that Mr. Acevedo has not satisfied.

Mr. Acevedo's strongest argument to rebut the presumption of irreparable harm is that he has been terminated by Postalogic and is no longer in breach of the agreement. This argument is not completely without merit. As I stated at the hearing, there is generally no irreparable harm where the activity violating a restrictive covenant has ceased, and there is no danger of future violations. *See H & M Hearing Assoc., LLC v. Nobile*, 950 So.2d 501, 503 (Fla. 2d DCA 2007).

But I am not convinced that Mr. Acevedo is not likely to violate the agreement again. At the hearing, Mr. Acevedo admitted that he was seeking employment in the postal technology industry. At no time, did he testify that he would not accept employment in the areas restricted by the covenant. On the contrary, he stated that he was looking for employment and that "it could be anywhere." *See* Hr'g Tr. (Mr. Acevedo's test.)

Mr. Acevedo argues that he does not have a "history" of breaching the agreement. This is not entirely accurate. The evidence suggests that as early as December 17, 2007 - less than a month after he left Pitney Bowes - he could have breached the agreement by soliciting business from a Pitney Bowes' client. *See* December 17, 2007, email from Mr. Acevedo to Pitney Bowes' customer. Even more troubling, Mr. Acevedo apparently beached the agreement on June 6, 2008, presumably after he had received the May 26, 2008 cease and desist letter from Pitney Bowes' attorney. This type of disregard for the employment restrictions all but establish that Mr. Acevedo is likely to violate the covenants again unless enjoined.

Mr. Sieber testified that he would not hire Mr. Acevedo until the expiration of the

employment restrictions.  But it seems to me that this is more of a litigation position than a true commitment to honor a competitor's agreement.  Indeed, Mr. Sieber knew that Mr. Acevedo was subject to a non-compete agreement when he hired him and seems to have - at a minimum - acquiesced as to Mr. Acevedo's breach.  Further, when questioned about his reason for terminating Mr. Acevedo, his main reason was that he did not have the financial wherewithal to litigate against Pitney Bowes, not that he respected Mr. Acevedo's employment restrictions.

In sum, I find  that Mr. Acevedo and Mr. Sieber's new-found determination to honor Mr. Acevedo's employment restrictions do not rebut the strong presumption of irreparable harm.

### D.  BALANCE OF THE HARMS

I also agree with Pitney Bowes that the harm it will suffer if Mr. Acevedo is not enjoined outweighs the potential harm of an injunction against Mr. Acevedo.  After all, the non-compete was a condition for Mr. Acevedo's employment and for him to have access to Pitney Bowes' confidential information.  Allowing Mr. Acevedo to potentially violate the covenant again will defeat Pitney Bowes' efforts to protect its confidential information from competitors.

Any  harm to Mr. Acevedo is minimal in comparison.  I understand that he would prefer to work in Miami, but that is a burden  he undertook when he signed the non-compete and then decided to resign from Pitney Bowes.  And he testified that, other than the long commute, he was not prejudiced by working outside of the restricted area.  Indeed, his last job was with Postalogic in Palm Beach County.

### E.  PUBLIC INTEREST

I also conclude that an injunction here will not be adverse to the public interest.  On the contrary, the public has a cognizable interest in the protection and enforcement of contractual rights. *See Johnson Controls, Inc. v. Rumore*, 2008 WL 203575, * 14 (M.D.Fla. Jan. 23, 2008); *C.H. Robinson Worlwide, Inc. v. B & G Produce, Inc.*, 2007 WL 41946, *3 (M.D.Fla. January 4, 2007). This interest is particularly strong with respect to non-compete agreements, as the Florida Legislature has determined that the enforcement of such agreements is in the public's best interest.  *See Autonation*, 347 F. Supp. 2d at 1308 ("the Florida Legislature has determined that in order to refuse enforcement of an otherwise enforceable restrictive covenant based on public policy considerations, the specified public policy must substantially outweigh the need to protect the legitimate business

interest or interests established by the person seeking enforcement of the restraint").

### D. BOND

Under Florida law, a "proper bond" is required to issue an injunction enforcing a non-compete agreement. *See* § 542.335(j). Generally, the amount of the bond in this type of cases reflects the potential loss of salary reduced by the possibility of other employment opportunities in non-restricted areas and other mitigating factors. *See Montville v. Mobile Med. Indus., Inc.*, 855 So.2d 212, 215-16 (Fla. 4th DCA 2003).

Here, the parties have not presented any evidence on the proper amount of the required bond. The only testimony as to Mr. Acevedo's compensation was Mr. Sieber's statements that Mr. Acevedo's sales had not been "stellar." This implies, albeit indirectly, that Mr. Acevedo's compensation was not "stellar" either. I am, however, reluctant to base the amount of the proper bond on such speculation, particularly because a "proper bond" is statutorily required.

Instead, I will require Pitney Bowes to post a $50,000 bond. This amount should be sufficient to compensate Mr. Acevedo for any loss incurred as a result of an injunction if he ultimately prevails on the merits of this case.

### III. CONCLUSION

Accordingly, Mr. Acevedo is hereby enjoined until November 20, 2008[3] from

(1) directly or indirectly owning, managing, operating, joining, being employed by or participating in the ownership, management, operation, or control of, or being connected in any manner with any business of the type or character of Pitney Bowes within a radius of fifty (50) miles of the territory in which he was working at time of his resignation; and/or

(2) contacting, directly, or indirectly, any prospective customer or current customer of Pitney Bowes that he had contact with during one year prior to his resignation, or contacting any prospective customer that he learned of during his employment with Pitney Bowes.

---

[3] Pitney Bowes' request to extend the period of the employment restrictions is denied without prejudice. I will reconsider this decision upon the expiration of this injunction, though I doubt that I will extend the injunction for a year, as Pitney Bowes has requested.

Pitney Bowes must post a bond in the amount of $50,000 no later than July 30, 2008.  If such a bond is not posted, the injunction will be automatically dissolved.

DONE and ORDERED in chambers in Miami, Florida, this 28th day of July, 2008.

Adalberto Jordan
United States District Judge

Copy to:        All counsel of record